UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

                                     Case No.      14-70004 (CEC)

Ramon Nina,                            Case No.      14-41669 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

Lori Cannan,                          Case No.      14-70005 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

Walter L. Turner,                    Case No.      14-70027 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

 Jeffrey B. Alexander,              Case No.      14-70028 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

Diane E. Williams,                  Case No.      14-40074 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

Inez R. Turrietta,                  Case No.      14-40076 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

In re:

Tamara D. Jackson-Ball,          Case No.      14-40147 (CEC)

                       Debtor.        (Chapter 13)

-------------------------------------------------------------x

```
--------------------------------------------------------x
```
In re:

                                                    Case No.        14-40184 (CEC)

Sorie Dumbuya,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                    Case No.        14-40284 (CEC)

Nekisha E. Adekoya,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                     Case No.        14-40516 (CEC)

Adrian D. Blackwell,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                    Case No.        14-40567 (CEC)

Robert Q. White,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                     Case No.        14-41071 (CEC)

Bobby D. Blevins,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                     Case No.        14-41073 (CEC)

Deborah Smith,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```
In re:

                                                     Case No.        14-41116 (CEC)

Jose G. Higmera,
                                                    (Chapter 13)

                         Debtor.
```
--------------------------------------------------------x
```

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41117 (CEC)

Marcus W. Mullings,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41118 (CEC)

Shermaine Donadelle-Moore,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41214 (CEC)

David T. Zullo,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41215 (CEC)

Cecilia U. Oquendo,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41292 (CEC)

Glenn Norman Ross,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41446 (CEC)

Aretha C. Johnson,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```
In re:

                                 Case No.      14-41447 (CEC)

Gil Lamar Coley,

                                 (Chapter 13)

                  Debtor.

```
-----------------------------------------------------------x
```

```
-----------------------------------------------------------x
```
In re:

Regina B. Westbrook,

                Debtor.

Case No.      14-41448 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Deborah J. Loffer,

                Debtor.

Case No.      14-41584 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Natasha Correa,

                Debtor.

Case No.      14-41585 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Dwayne C. Smith,

                Debtor.

Case No.      14-41671 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Allen D. James,

                Debtor.

Case No.      14-41749 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Bobby Bailey,

                Debtor.

Case No.      14-40703 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```
In re:

Paramesvarm Apputhurai,

                Debtor.

Case No.      14-41747 (CEC)

(Chapter 13)

```
-----------------------------------------------------------x
```

---------------------------------------------------------------x

In re:

Lilia Ramirez,

                    Debtor.

Case No.     14-41699 (CEC)

(Chapter 13)

---------------------------------------------------------------x

William K. Harrington, as the United States
Trustee Region 2,

                    Plaintiff,

v.

MVP Home Solutions, LLC; Silverstein & Wolf
Corp.; Marcus A. Mullings, individually and as
an officer of MVP Home Solutions, LLC;
Amal M. Balmacoon, aka Martin Balmacoon,
individually and as chief executive office and
sole shareholder of Silverstein & Wolf, Corp.;
John Nelson, individually, and as agent for
Silverstein & Wolf, Corp.,

                    Defendants.

Adv. Pro. Nos.
15-08230 (CEC), 15-01099 (CEC)
15-08231 (CEC), 15-08233 (CEC)
15-08234 (CEC), 15-01100 (CEC)
15-01101 (CEC), 15-01102 (CEC)
15-01103 (CEC), 15-01104 (CEC)
15-01106 (CEC), 15-01107 (CEC)
15-01108 (CEC), 15-01109 (CEC)
15-01110 (CEC), 15-01111 (CEC)
15-01112 (CEC), 15-01113 (CEC)
15-01114 (CEC), 15-01115 (CEC)
15-01116 (CEC), 15-01117 (CEC)
15-01118 (CEC), 15-01119 (CEC)
15-01120 (CEC), 15-01121 (CEC)
15-01122 (CEC), 15-01123 (CEC)
15-01124 (CEC), 15-01125 (CEC)

---------------------------------------------------------------x

## DECISION ON SUMMARY JUDGMENT

APPEARANCES

Alicia M. Leonhard, Esq.
74 Chapel Street, Room 200
Albany, NY 12207
*Trial Attorney for the United States Trustee*

Gerard M. Hertz, Esq.
37-05 74th Street, 2nd Floor
Jackson Heights, NY 11372
*Counsel for Silverstein & Wolf
Corp., Amal M. Balmacoon, and
John Nelson*

Norma Ortiz, Esq.
Ortiz & Ortiz LLP
32-72 Steinway Street, Suite 402
Astoria, NY 11103
*Counsel for Marcus A. Mullings and MVP
Home Solutions, LLC.*

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion for summary judgment of William K. Harrington, United States Trustee, Region 2 ("Plaintiff" or "U.S. Trustee"), requesting the Court to (1) direct MVP Home Solutions, LLC, Silverstein & Wolf Corp., Marcus A. Mullings, Amal M. Balmacoon and John Nelson (collectively the "Defendants") to forfeit all fees they received from the debtors in these cases under 11 U.S.C. § 110(h)(3)(A) and (B); (2) impose treble fines for each violation of § 110(b), (d), (e)(1), (f), (g) and (h)(2), as set forth in 11 U.S.C. § 110(l)(1); and (3) enjoin the Defendants from acting as bankruptcy petition preparers under § 110(j)(1) (the "Summary Judgment Motion").[1] The U.S. Trustee alleges that Defendants prepared, signed and filed thirty handwritten skeletal chapter 13 petitions in the names of twenty-nine debtors in these cases and violated numerous statutory requirements, engaged in fraudulent, unfair and deceptive acts, filed the petitions to stay foreclosure without prior notice to the debtors, forged the debtors' signatures on the petitions, and abused the bankruptcy system.[2] Because the undisputed material facts support the U.S. Trustee's claims, the motion for summary judgment is granted and the Defendants are enjoined from acting as bankruptcy petition preparers, and are directed to forfeit fees and pay treble fines.

<u>JURISDICTION</u>

This Court has jurisdiction of this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

---

[1] All statutory citations are to the sections of the United States Bankruptcy Code, Title 11 U.S.C. et seq., except as otherwise indicated.

[2] Two cases were commenced in the name of debtor Ramon M. Nina: 14-70004-cec and 14-41669-cec.

<u>BACKGROUND</u>

The facts set forth below are not in dispute except where otherwise noted.

Defendant MVP Home Solutions, LLC ("MVP") is a New Jersey Corporation formed on July 1, 2008, that provides "foreclosure rescue services" to distressed homeowners, through a nationwide network of sales directors, managers, and agents. (Mot. for Summ. J., Stmt of Undisputed Material Facts, March 1, 2016, ¶¶ 1, 3, ECF. No. 20.)[3] Defendant Marcus M. Mullings ("Mullings") is an officer and Acquisition Director of MVP, who oversees MVP's day-to-day operations. (Mot. for Summ. J. ¶ 2, ECF No. 20.) Defendant Silverstein & Wolf Corp. ("S&W") is a New York corporation, formed in February 2014, which is involved in real estate investment. (Mot. for Summ. J. ¶ 4, ECF No. 20.) Defendant Amal M. Balmacoon ("Balmacoon") is the Chief Executive Officer and sole shareholder of S&W. (Mot. for Summ. J. ¶ 5, ECF No. 20.) Neither Mullings nor Balmacoon is a lawyer, and MVP and S&W are not law firms. (Mot. for Summ. J. ¶ 6, ECF No. 20.) Defendant John Nelson ("Nelson") is a paralegal and independent contractor employed by S&W. (Mot. for Summ. J. ¶ 7, ECF No. 20.)

During late 2013, Balmacoon met with Mullings to discuss the foreclosure business and staying foreclosure sales. (Mot. for Summ J. ¶ 8, ECF No. 20.) On December 10, 2013, MVP, through Mullings, and S&W, through Balmacoon, entered into a contract (the "Consultant Service Agreement") for S&W to provide services related to MVP's foreclosure rescue business. (Mot. for Summ. J. ¶ 9, ECF No. 20, Ex. 4.) Defendant Balmacoon disputes the assertion that S&W entered into the Consultant Service Agreement, stating that S&W was not in existence when the Consultant

---

[3] The United States Trustee's motion is filed in adversary proceedings brought in these thirty unconsolidated cases. Because the relevant facts in these proceedings are the same, and the papers filed in connection with the U.S. Trustee's summary judgment motions are substantially identical, references to the record in this opinion are limited to the record in a single proceeding. Accordingly, references to "ECF No." are to documents filed on the docket of Adv. Pro. No. 15-08230-cec.

Service Agreement was signed. Balmacoon alleges that the Consultant Service Agreement was between MVP and an entity identified as Silverstein & Wolf Financial Corp. (Statement of Disputed Material Facts, at 6-7, ECF No. 28.) Under the terms of the Consultant Service Agreement, Silverstein & Wolf Financial Corp. agreed to stay foreclosure sales for MVP's clients by filing skeletal Chapter 13 bankruptcy petitions. (Mot. for. Summ J. ¶ 11, ECF No. 20.) MVP agreed to pay S&W $1,850.00 ($400.00 upfront and $200.00 per month thereafter) for every MVP client referred to S&W. (Mot. for Summ. J. ¶ 12, ECF No. 20.) Balmacoon alleges that, notwithstanding the terms of the Consultant Service Agreement, he worked in his individual capacity throughout the relevant period. (Statement of Disputed Material Facts, at 7, ECF No. 28.) Balmacoon adds that he personally did not prepare or file any bankruptcy petitions. (Statement of Disputed Material Facts, at 7, ECF No. 28.)

During December 2013, MVP began recruiting distressed homeowners for the "Stop the Sale Date Program," also known as "Stop the Sheriff Sale" ("Stop the Sale Date"), through MVP's nationwide network of affiliates. (Mot. for Summ. J. ¶ 13, ECF No. 20.) MVP used the word "legal" in the informational brochure disseminated to clients and potential clients, and in the Stop the Sale Date contracts it entered with homeowners. (Mot. for Summ. J. ¶ 14, ECF No. 20.) Between January and April, 2014, MVP recruited 29 homeowners for Stop the Sale Date (collectively, the "Debtors"), and referred the Debtors to S&W to stay impending foreclosure sales. (Mot. for Summ. J. ¶ 15, 16, ECF No. 20.) As MVP Clients, the Debtors executed two agreements with MVP: under the MVP Service Agreement, MVP agreed to stay the Debtors' foreclosure sales as long as the Debtors remained current on monthly payments for a minimum of four months at a cost of $1,095.00 upon signing and $995.00 per month thereafter; and under the MVP

Authorization, the Debtors agreed to designate MVP as agent in fact "to do whatever is reasonably and legally possible to avoid foreclosure." (Mot. for Summ. J. ¶¶ 17-19, ECF No. 20.)

Between January and April 2014, MVP referred the Debtors, all of whom were facing imminent foreclosure sales, under Stop the Sale Date to Balmacoon and provided him with the MVP Authorization for each Debtor. (Mot. for Summ. J. ¶ 20, 21, ECF No. 20.) Balmacoon then forwarded the referrals and documents to Nelson, who prepared and filed the Chapter 13 bankruptcy petitions in this Court for each of the Debtors (the "Petitions"). (Mot. for Summ. J. ¶ 22, ECF No. 20.) Balmacoon alleges that Nelson functioned as an independent contractor for Balmacoon, not S&W. (Statement of Disputed Material Facts, at 8, ECF No. 28.) Nelson handwrote the skeletal Petitions and filed them, or delegated the preparation and filing to one of two friends named Ty and Sankore. (Mot. for Summ. J. ¶ 23, ECF No. 20.) The Debtors did not sign the Petitions. (Mot. for Summ. J. ¶ 26, ECF No. 20.) Although none of the Debtors resides within the Eastern District of New York, each of the Petitions prepared by Nelson contained two addresses for the Debtors: one of five false addresses in the district (four in Queens and one in Long Island), and as a mailing address, the Debtors' residence out of state. (Mot. for Summ. J. ¶¶ 24, 25, ECF No. 20.) One of the false Queens addresses was Balmacoon's residence, while two others were Nelson's current and former addresses. The Long Island address was a house that belonged to a company owned by Balmacoon's parents. (Mot. for Summ. J. ¶ 25, ECF No. 20.) Nelson claims that he did not sign the Debtors' names on the Petitions; rather he had his friends, Ty and Sankore, sign them. (Mot. for Summ. J. ¶ 27, ECF No. 20.)

Defendants Mullings, Balmacoon, and Nelson claim they had authorization from the Debtors to prepare, execute, and file the Petitions on the Debtors' behalf by virtue of the MVP Authorizations the Debtors signed. (Mot. for Summ. J. ¶ 28, ECF No. 20.) But the Petitions do not

contain signatures, identification numbers, or any contact information for MVP, S&W, Balmacoon, Mullings, Nelson, or any other persons involved with the authorization, preparation and filing of the Petitions. (Mot. for Summ. J. ¶ 29, ECF No. 20.) None of the Defendants contacted the Debtors prior to filing the Petitions. (Mot. for Summ. J. ¶ 30, ECF No. 20.) Nelson filed the paper copies of the Petitions with the Clerk of the Bankruptcy Court, or delegated the filing to Ty and Sankore, and paid a portion of the filing fee from funds provided by Balmacoon. (Mot. for Summ. J. ¶ 31, 32, ECF No. 20). MVP paid Balmacoon and S&W to prepare and file the Petitions with money paid by Debtors. (Mot. for Summ. J. ¶ 33, ECF No. 20).[4] Balmacoon, in turn, paid Nelson to prepare and file the petitions and to pay the filing fees. (Mot. for Summ. J. ¶ 34, ECF No. 20.) The Defendants did nothing, other than filing the Petitions, to assist the Debtors in resolving their foreclosures. (Mot. for Summ. J. ¶ 35, ECF No. 35.)

On August 17, 2015, the U.S. Trustee commenced this adversary proceeding seeking treble fines against the Defendants as bankruptcy petition preparers under §110, forfeiture of fees paid by Debtors for Stop the Sale Date, and an injunction to prevent Defendants from acting as bankruptcy petition preparers. (Complaint, August 17, 2015, ECF No. 1.). On March 2, 2016, the U.S. Trustee filed a motion for summary judgment pursuant to § 110(h)(3)(A), 110(h)(3)(B), 110(b), 110(d), 110(e)(1), 110(f), 110(g), 110(h)(2), 110(*l*)(1), and 110(j)(1). (Mot. for Summ. J. ECF No. 20.) Defendants Balmacoon, Nelson, and S&W filed objections to the Summary Judgment Motion. (Opp'n to the Mot. for Sum. J., April, 12, 2016, ECF No. 21.) The U.S. Trustee filed a reply memorandum in support of the summary judgment motion on April 10, 2016. (U.S. Trustee's Reply Memorandum, April 10, 2016, ECF No. 25.) On May 3, 2016, Defendants Balmacoon, Nelson, and S&W filed a statement of material facts. (Statement of Disputed Material

---

[4] Balmacoon disputes this, insisting that MVP paid money to him, not to S&W, to prepare and file the Petitions. (Statement of Disputed Material Facts, at 8, ECF No. 28).

Facts, ECF No. 28.) On April 28, 2016, a hearing was held on the Summary Judgment Motion and the Court reserved decision.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the Court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and…draw all reasonable inferences in the [non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003). "The nonmoving party must show there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted). Here, the material facts are not in dispute.

DISCUSSION

I.    The Defendants are Bankruptcy Petition Preparers under § 110(a)

The U.S. Trustee asserts that MVP, S&W, Balmacoon, Nelson, and Mullings are bankruptcy petition preparers subject to the requirements of §110 of the Bankruptcy Code. "Bankruptcy petition preparer" ("BPP") is defined as a "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" in a bankruptcy case. 11 U.S.C. § 110(a)(1); In re McDonald, 318 B.R. 37, 43 (Bankr. E.D.N.Y. 2004). A

"document for filing" is a "petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with [a bankruptcy case]." 11. U.S.C. § 110(a)(2). The term "person" includes individual, partnership and corporation. 11 U.S.C. § 101(41). If a corporation and its employees or principals receive money to prepare bankruptcy petitions, all of them are BPPs under § 110. U.S. Trustee v. Burton (In re Rosario), 493 B.R. 292, 328 (Bankr. D. Mass. 2013). Moreover, a person may be a BPP even if he, she, or it does not receive funds directly from the debtor. In re Gaftick, 333 B.R. 177, 184 (Bankr. E.D.N.Y. 2004).

All of the Defendants engaged in the preparation for filing of bankruptcy petitions, for compensation, within the meaning of § 110. It is undisputed that none of the Defendants are attorneys or law firms. MVP and S&W entered into a contract providing for S&W to prepare and file Chapter 13 petitions for the Debtors, clients of MVP.  All of the Defendants, directly or indirectly, received money to prepare bankruptcy petitions. The Defendants meet the definition of BPPs. Defendants MVP and Mullings filed no opposition to the Summary Judgment Motion, do not contest the material facts asserted by the United States Trustee, and acknowledge that under a "strict reading" of § 110, they are BPPs, whether or not they prepared any bankruptcy petitions. (Statement in Resp. to the U.S. Trustee's Mot. for Summ. J., ¶ 2, ECF No. 26.) MVP paid fees for preparing and filing the Petitions to Balmacoon, who is also a BPP, an assertion Balmacoon does not contest. Balmacoon is also a BPP his capacity as principal of S&W. Nelson prepared and filed the Petitions for compensation, and therefore he is a BPP as well.

II.     S&W is a BPP under § 110(a)(1)

The U.S. Trustee argues that Defendant S&W is a BPP as defined in § 110(a)(1). (U.S. Trustee's Reply Mem. in Supp. of his Mot. for Summ. J.,7, ECF No. 25.) The U.S. Trustee points

out that MVP, through Mullings, entered into the Consultant Service Agreement with S&W to provide foreclosure rescue related services; that the Consultant Service Agreement was binding on MVP and S&W; and that under the Consultant Service Agreement, S&W agreed to stay foreclosure sales for MVP's clients, by filing skeletal chapter 13 bankruptcy petitions. (Mot. for Summ. J. ¶¶ 9-11, ECF No. 20.)

S&W claims that it was not a BPP or a party to the Consultant Service Agreement. S&W alleges that it was not in existence at the time the Consultant Service Agreement was entered into, December 10, 2013; but that it was formed two months later, on February 10, 2014. S&W also argues that it was not a party to the Consultant Service Agreement because the Consultant Service Agreement named Silverstein & Wolf Financial Corp. as a party, not Silverstein & Wolf Corp. (Statement of Disputed Material Facts, 6-7, ECF No. 28.) S&W and Balmacoon also argue that, although Balmacoon created S&W for the purpose of engaging in this business venture with Mullings and MVP, "it was never actually used;" instead, Balmacoon claims he worked entirely in his individual capacity. (Statement of Disputed Material Facts, 6-7, ECF No. 28.)

These allegations are insufficient to raise a genuine issue of material fact as to whether S&W is a party to the Consultant Service Agreement and a BPP. Balmacoon testified that the original name he chose for this entity was "Silverstein & Wolf Financial Corp.," which he decided to change to "Silverstein & Wolf Corp." upon the recommendation of "the company who I went through to incorporate the company." (Mot. for Summ. J. Ex. Tr. III 106:13-25; 107:2-12, ECF No. 20-6.) Balmacoon also testified that "I let [Mullings] know that I had to make a change to my company name. Unfortunately that agreement never got changed." (Mot. for Summ. J., Ex. Tr. III 107:10-13, ECF No. 20-6). There was only one Silverstein & Wolf Corporation, incorporated on February 10, 2014. (Mot. for Summ. J. ¶ 4, ECF No. 20.) The misnaming of a party to a contract

does not invalidate the contract unless there is an actual belief by the other contracting party that it was entering into an agreement with a different entity. Spanierman Gallery, PSP v. Love, 320 F. Supp. 2d 108, 112 (S.D.N.Y. 2004). Such a technical error has no effect on the ability of either party to enforce the terms of the contract. Id. at 111. Therefore, the fact that S&W was incorrectly identified in the Consultant Service Agreement as "Silverstein & Wolf Financial Corp." does not relieve S&W or MVP of its obligations under the Consultant Service Agreement, and S&W and Balmacoon will not be allowed to capitalize on this technical error. Id. at 112. Thus, S&W is a party to the Consultant Service Agreement.

Balmacoon and S&W also argue that S&W is not a party to the Consultant Service Agreement because S&W was incorporated after the execution of the contract. (Statement of Disputed Material Facts, 6, ECF No. 28.) Under New York law, a corporation is bound by a contract, executed in its name prior to its formation, when it ratifies, adopts, or accepts the contract after the formation. Metro Kitchenworks Sales, LLC v. Continental Cabinets, LLC, 820 N.Y.S.2d 79, 80-81 (N.Y. App. Div. 2006). See also Torelli v. Torelli, 941 F. Supp. 36, 38 (S.D.N.Y. 1996) (a contract executed in the name of a New York corporation before it is formally organized is valid and binding if the corporation subsequently ratifies the contract). "[R]atification need not be explicit; rather, it may be inferred from. . .acts performed in furtherance of the contract." Prescient Acquisition Grp, Inc. v. M.J. Pub. Trust, No. 05 Civ. 6298, 2006 WL 2136293, at *3 (S.D.N.Y. July 31, 2006). See also United States v. Toscano (In re Toscano), 799 F. Supp. 2d 230, 243 (E.D.N.Y. 2011) (ratification is implied by, among other things, acquiescing, performing under, acting upon, or acknowledging the contract). If S&W ratified the Consultant Service Agreement by accepting MVP's referral of Debtors under Stop the Sale Date, accepting payment from MVP, then referring the Debtors to Nelson to file the Petitions, then the fact that S&W was incorporated

two months after the Consultant Service Agreement does not raise a genuine dispute of material fact as to S&W's liability as a BPP.

This leads to the principal argument advanced by Balmacoon and S&W in opposition to this motion. Balmacoon alleges that he was acting in his individual, as opposed to corporate, capacity when he accepted Debtor referrals from MVP. In a Rule 2004 examination conducted by the United States Trustee, Balmacoon testified as follows:[5]

> Q: So did you or did you not create Silverstein & Wolf Corp. for sole purpose of engaging in this business venture with Mr. Mullings?
> A: I did, but it never actually was used as the company that Mr. Mullings made payments to, any sort of business, to because as I said before Mr. Mullings and any check that he submitted or I submitted, it was paid to my personal account and there is no accounting records that Mr. Mullings could provide to show that he paid anything to Silverstein & Wolf.

(Statement of Disputed Material Facts, 6-7, ECF No. 28.)

The argument that S&W is not a BPP because Balmacoon acted in his individual capacity, rather than as a principal of S&W, must be rejected for several reasons. First, Balmacoon, the principal and sole shareholder of S&W, did not repudiate the contract as between S&W and MVP, but rather accepted the contract's benefits. Between January and April, 2014, Balmacoon accepted money from MVP for consulting and foreclosure related services for the Debtors and referred the files to Nelson who filed the Petitions. (Mot. for Summ. J. ¶¶ 20-23, ECF No. 20.)  Both of these acts ratified the Consultant Service Agreement. Balmacoon performed S&W's obligations under the contract with full knowledge of its terms and material facts, and there is no evidence that

---

[5] At oral argument, counsel for S&W and Balmacoon was candid about the reason for advancing this argument: "Well, because I – I just – because you're going to [fine] each of the individual Debtor, each of the individual bankruptcy petition preparers individually. If I remove an – a bankruptcy preparer, then I remove a whole line of – of – of fines. . .So if – so there are only two bankruptcy preparers, Balmacoon and – Nelson. There are only two lines of fines. So maybe I could cut the fines down by one third." (Transcript of the Hearing Held on April 28, 2016, 40:20-41:4, ECF No. 29.)

Balmacoon ever stated that he was acting in an individual capacity or attempted to repudiate the Consultant Service Agreement.

Nor is there any evidence that S&W assigned the Consultant Service Agreement to Balmacoon. An effective assignment of a claim or contract right requires the claim's owner to manifest "an intention to make the assignee the owner of the claim." Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.à.r.l, 790 F.3d 411, 418 (2d Cir. 2015) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11 (2d Cir. 1997)). Under New York contract law, "[u]ncommunicated subjective intent [to transfer a contract right] alone cannot create an issue of fact where otherwise where there is none." Property Asset Mgmt, Inc. v. Chicago Title Ins. Co., 173 F.3d 84, 87 (2d Cir. 1999) (quoting Wells v. Shearson Lehman/Am. Exp., Inc., 72 N.Y.2d 11, 24 (1988)). "Thus, although no particular formula is needed to create an assignment under New York law, there is a need for some 'act or words' that manifest an intent to assign." Id. at 87. (quoting Miller v. Wells Fargo Bank Int'l Corp., 540 F.2d 548, 557 (2d Cir. 1976)). The Court in Property Asset Management noted that "[i]f intent alone were enough to assign, and to do so retroactively, then the holder of a contract could choose at will which of its corporate personalities would be the beneficiary of any given contract on any given day." Id. at 87. Here, there is no evidence that Balmacoon manifested any intent to assign the Consultant Service Agreement to himself, either orally or in writing. Balmacoon's attempt after the fact to argue that he acted personally in performing the obligations under the Consultant Service Agreement is merely an allegation of "uncommunicated subjective intent" that is insufficient to create a genuine issue of material fact. Id.

Balmacoon argues that the fact that he acted individually in receiving and processing referrals from MVP is evidenced by records showing payments made to him directly, rather than

to any account in the name of S&W. (Statement of Disputed Material Fact, 6-7, ECF No. 28.)

Balmacoon was the sole officer, director and shareholder of S&W. His use of a personal rather

than a corporate bank account to deposit payments received from MVP might support a finding

that he is liable for the actions of S&W under a corporate veil piercing theory, but does not affect

S&W's liability as a BPP under the Consultant Service Agreement. <u>E.g.</u> <u>Mars Elec. of N.Y., Inc.</u>

<u>v. U.S.A. Direct, Inc.</u>, 28 F. Supp. 2d 91, 98 (E.D.N.Y. 1998) (sole shareholder held personally

liable for corporation's obligations because he dominated and controlled every aspect of

corporation's business, made all material decisions concerning the operation of the business, and

commingled business and personal funds in his personal checking account to render corporation

the sole shareholder's alter ego).

III.     <u>Balmacoon is a BPP under § 110(a)(1)</u>

    Balmacoon is a BPP as defined under § 110(a)(1), whether he acted in his individual

capacity or on behalf of S&W. (U.S. Trustee's Reply Mem. in Supp. of Mot. for Summ. J., 10,

ECF No. 25.)   Balmacoon argues that he is not a BPP because he did not participate in the

preparation of the petitions or give any instructions to Nelson on how to prepare them. (Opp'n to

Mot. for Summ. J. 5, ECF No. 21.) Balmacoon also claims that he did not receive payments directly

from the Debtors or provide Nelson with the funds to pay the filing fees. (Opp'n to Mot. for Summ.

J. 6, ECF No. 21.)

    These arguments are unavailing. The definition of a BPP is not limited to persons who

actually prepare and file bankruptcy petitions. <u>See</u> <u>In re Jolly</u>, 313 B.R. 295, 300 (Bankr. N.D.

Ohio. 2004) ("The fact that the person does not place the data and the numbers on the form does

not excuse that person from advising the court of their participation in the process of preparing the

documents for filing with the bankruptcy court. Neither does the fact that the person provided these

services by computerized services excuse the person from revealing that person's role in the preparation of the documents"). Moreover, a person need not receive direct payment from the debtor to be considered a BPP. <u>Gaftick</u>, 333 B.R. at 186 (national franchisor, to which its franchisee remitted a portion of fee collected for preparation of debtor's Chapter 7 petition, schedules, and statement of financial affairs, qualified as BPP, even though it did not receive payment directly from debtor). Lack of knowledge of the Bankruptcy Code is irrelevant as well. <u>In re Ali</u>, 230 B.R. 477, 483 (Bankr. E.D.N.Y. 1999) (foreclosure consultant's alleged lack of knowledge of § 110 was not reasonable cause for his numerous violations of its provisions in preparing skeletal bankruptcy petitions on his client's behalf for the purpose of delaying foreclosure, and did not affect the propriety of monetary sanctions to deter future illegal conduct on his part). Whether or not he understood the requirements of § 110 or filed any of petitions himself, Balmacoon is a BPP because of his role in arranging for the preparation of the Petitions and the receipt and disbursement of fees from MVP for filing the Petitions pursuant to the Consultant Service Agreement.

IV.    <u>Nelson is a BPP under § 110(a)(1)</u>

Nelson is also a BPP under § 110(a)(1). Nelson admits that he prepared and filed the Petitions but states that he operated merely as an independent contractor. (Opp'n to Mot. for Summ. J. at 5, ECF No. 21).

Nelson meets the definition of a BPP squarely: he prepared and filed the handwritten skeletal petitions with the Court or delegated the task to two other individuals. (Mot. for Summ. J. ¶ 23, 27, 31, ECF No. 20.) Nelson received payment for his services from Balmacoon for the preparation and the filing, using a portion to pay court filing fees. (Mot. for Summ. J. ¶ 34, ECF No. 20.) Whether Nelson functioned as an independent contractor is irrelevant to his status as BPP.

V.    <u>Defendants violated 11 U.S.C. § 110(b), (c), (d), (g) and (h)(2)</u>

Section 110(b)(2)(A) and (B) require a BPP to provide written notice to a debtor on the official form prescribed by the Judicial Conference in accordance with Federal Rules of Bankruptcy Procedures 9009 before preparing any document for filing or accepting any fees from or on behalf of a debtor. The Defendants were required to file the Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer (the "BPP Notice") and the Declaration and Signature of Non-Attorney Bankruptcy Petition Preparer (the "BPP Declaration").[6] The Defendants have not filed BPP Notices or BPP Declarations in any of the Debtors' cases. Thus, the Defendants did not comply with § 110(b)(2)(A) and (B).

Under § 110(b)(1), a BPP is required to sign and print the BPP's name and address on documents for filing. It is undisputed that Defendants did not comply with § 110(b)(1) in any of the Debtor's cases. (Mot. for Summ. J. ¶ 29, ECF No. 20.)

Under §§ 110(c)(1) and (2), a BPP and each person that assisted with the preparation of documents for filing must print his or her social security number on all documents for filing. If the BPP is not an individual, an officer, principal, responsible party, or partner of the BPP must print his or her social security number on any documents for filing that the BPP prepared. It is undisputed the Defendants did not comply with this provision in any of the Debtors' cases. (Mot. for Summ. J., ¶ 29, ECF No. 20.)

Section 110(d) provides that, no later than when the debtor signs a document for filing, a BPP must provide the debtor with a copy. It is undisputed that Defendants did not provide the

---

[6] The BPP Declaration – Form B 19 – was superseded by the Bankruptcy Petition Preparer's Notice, Declaration and Signature, or Form B 119, effective December 1, 2015. Form B 119 must be signed by a debtor and BPP under penalty of perjury, and be filed with any document for filing.

Debtors with copies of their petition, contact them prior to filing their petitions, or do anything other than file the Petitions. (Mot. for Summ. J., ¶¶ 30, 35, ECF No. 20.)

Under § 110(g), a BPP shall not collect or receive any payment for court fees from or on behalf of the debtor. It is undisputed that MVP paid Balmacoon and S&W a portion of the fees MVP received from the Debtors to prepare and file the Petitions upon the referrals. Balmacoon, in turn, paid Nelson to prepare and file the Petitions and to pay the filing fees. Nelson paid the filing fees upon filing the Petitions with the Court. (Mot. for Summ. J. ¶ 12, 18, 32-34, ECF No. 20.) These actions violate § 110(g).

Under § 110(h)(2), BPPs must file a Disclosure of Compensation of Bankruptcy Petition Preparer ("Form B 280"), disclosing, under penalty of perjury, any fees received from, or on behalf of, the debtor, and any unpaid fee charged to the debtor.[7] It is undisputed that the Defendants have not filed a Form B 280 in any of the Debtors' cases and have done nothing other than filing the Petitions to assist the Debtors in resolving their foreclosures. (Mot. for Summ. J. ¶ 35, ECF No. 20.)

VI.     MVP violated 11 U.S.C. § 110(f)

Section 110(f) provides that BPP shall not use the word "legal" or any similar term in any advertisements. MVP uses the word "legal" in informational brochures disseminated to clients. One brochure states that "[our] 'Stop the Sale Date Program' is handled by our experienced legal team. We start off by initiating a Chapter 13 bankruptcy and then dismissing it after 72 hours. Our attorney utilize [*sic*] the Chapter 13 within that 72 hours period to get an automatic stay…With all of those systems in place our legal team will be able to keep a foreclosure sale at bay for up to 5-6 years." (Mot. for Summ. J. Ex. 8, ECF No. 20-15.) Neither MVP, nor S&W, is a law firm, nor

---

[7] Form B 280 was superseded by Form B 2800, effective December 1, 2015.

does either have a legal team, legal department, or legal staff, and Mullings, Balmacoon, and Nelson are not lawyers. (Mot. for Summ. J. ¶ 6, ECF No. 20.) The brochure violates § 110(f), for which violation MVP is liable.

VII.    Defendants have engaged in fraudulent, unfair, and deceptive acts under 11 U.S.C. § 110(i)

Section 110(i) requires the bankruptcy court to order a BPP to pay the debtors actual damages, the greater of $2,000 or twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services, and reasonable attorney's fees and costs in moving for damages under § 110(i)(1), in the event a bankruptcy preparer "violates this section or commits any fraudulent, unfair, or deceptive act." Ali, 230 B.R. at 484. "Fraudulent, unfair and deceptive acts" include "filing of skeletal chapter 13 petitions merely to thwart foreclosure." Ali, 230 B.R. at 484. Here, the Defendants, as BPPs, filed petitions "to do whatever is reasonably and legally possible to avoid foreclosure." (Mot. for Summ. J. ¶ 19, ECF No. 20.) It is also undisputed that Nelson handwrote the skeletal petitions for Debtors referred by Balmacoon and filed them with the Court. (Mot. for Summ. J. Facts ¶ 23, ECF No. 20). None of the Petitions were filed with Debtor's true signature, which in each case was forged. (Mot. for Summ. J. ¶ 26, 27, ECF No. 20.) As the Court observed in In re France, 271 B.R. 748 (Bankr. E.D.N.Y. 2002), where a BPP filed skeletal petitions solely to stay foreclosure, "the BPP took advantage of his clients to his pecuniary advantage without rendering any bona fide services to them." France, 271 B.R. at 757. Here, too, the Defendants have engaged in practices that constitute an abuse of the bankruptcy system.

The Defendants' argument that they had authorization to prepare and file the Petitions based on the language of the MVP Authorization must be rejected. (Mot. for Summ. J. ¶ 28, ECF No. 20, "I authorize said designee(s) to do whatever is reasonably and legally possible to avoid foreclosure or otherwise help renegotiate my loan with my lender…"). The language of the MVP

16

Authorization contained no authorization to file for bankruptcy or execute a document on the Debtors' behalf. A power of attorney may not be used to file a petition on behalf of a debtor unless it contains language specifically authorizing the commencement of a bankruptcy case. In re Curtis, 262 B.R. 619, 623 (Bankr. D. Vt. 2001); See also In re Morgan, 182 B.R. 4, 5 (Bankr. S.D.N.Y. 1995) (Debtor's petition filed without her knowledge by another pursuant to an unacknowledged power of attorney that did not specifically authorize filing bankruptcy was deemed a legal nullity).[8]

## VIII.    Damages

Defendants S&W, Balmacoon, and Nelson argue that they are only secondarily liable to the Debtors as they did not make representations to the Debtors, did not deal directly with the Debtors, and did not receive fees directly from Debtors – all of which they claim mitigates their culpability. (Opp'n to the Mot. for Summ. J. 5-6, ECF No. 21.) While these Defendants may not have dealt directly with the Debtors, they nonetheless effectuated the fraudulent bankruptcy filings for the Debtors, and as BPPs, they are no less culpable than MVP and Mullings for violations of § 110. Under § 110, the Court, in its discretion, can impose a fine on each BPP.

The Defendants' conduct violating 11 U.S.C. §§ 110(b), (c), (d), (f), and (g) warrants the forfeiture of all fees received from the Debtors as permitted by § 110(h)(3)(B) of the Bankruptcy Code. It is undisputed that the Defendants have failed to sign and print their names and addresses for filing; print their social security numbers on all documents for filing; and provide the Debtors with copies of their Petitions. They did not disclose the payments received for court fees from or

---

[8]Even if the Defendants had obtained powers of attorney authorizing the commencement of bankruptcy cases on behalf of the Debtors, it would still have been improper to sign the Debtors' name on the Petitions, which creates the false impression that the Debtors signed Petitions, and constitutes forgery. (New York Penal Law §§ 170.00, 170.10). Under New York law, in any transaction where an agent is acting pursuant to a power of attorney and where the handwritten signature of the agent or principal is required, the agent must disclose the principal and agent relationship by: (1) signing "(name of agent) as agent for (name of principal)"; or (2) signing "(name of principal) by (name of agent)"; or (3) any similar written disclosure of the principal and agent relationship. New York Gen. Oblig. Law § 5-1507(1)(a)(1)-(3).

on behalf of the Debtors. MVP also used the word "legal" in its advertisement. (Mot. for Summ. J ¶ 29, 30, 35, ECF No. 20, Ex. 8.) Defendants are ordered to disgorge all fees received in connection with these cases.

The Defendants' conduct also triggers the imposition of a $500 fines for each enumerated violation of §§ 110(b), (c) (d), (f), (g) and (h)(2), as set forth in §110(l)(1). Treble fines are also appropriately assessed on Defendants for failing to inform the Debtors they were filing for relief under the Bankruptcy Code and for preparing the Petitions in a manner that failed to disclose the identity of the BPPs. 11 U.S.C §110(l)(2)(C) and (D). See also U.S. Trustee v. Miller (In re Bowyer), 489 B.R. 798, 814 (Bankr. N.D. Ind. 2013)  (imposing the maximum fine for each provision's violation, and trebling them based on the serious nature of the BPP's conduct in filing the offending documents, without debtor's knowledge or consent, and without disclosing their identities as BPPs). See also France, 271 B.R. at 757 (imposing a separate $500 fine for each violation in each of the three cases filed on debtors' behalf for failing to list the name, address, and social security number on any of the petitions, failing to furnish debtor with a copy of the petitions, and not filing declaration disclosing all fees received).

The Defendants' conduct warrants an injunction to prevent them from acting as BPPs under §110(j)(1). The Defendants' conduct violated § 110 in numerous ways, as detailed above. The Defendants have also engaged in fraudulent, unfair, and deceptive acts under § 110(i) in filing chapter 13 petitions merely to thwart foreclosures. 11 U.S.C § 110(j)(2)(A)(i)(III). Injunctive relief is appropriate to prevent any repetition of such conduct. Wynns v. Adams, 426 B.R. 457, 466 (Bankr. E.D.N.Y. 2010). The Defendants are, therefore, enjoined from engaging in this conduct.

<u>CONCLUSION</u>

For the reasons stated above, the Summary Judgment Motion is granted and the Defendants are ordered to forfeit fees, pay treble fines, and are further enjoined from acting as bankruptcy petition preparers. The U.S. Trustee is directed to settle an order consistent with this opinion.



**Dated: Brooklyn, New York**
**December 13, 2016**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**